IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ST. PAUL MERCURY INSURANCE      *
COMPANY                         *
                                *
        v.                      *      Civil No. JFM-05-3474
                                *
HONEYWELL INTERNATIONAL, INC.   *
                             *****

MEMORANDUM

This is a subrogation action brought by St. Paul Mercury Insurance Company ("St. Paul")

against Honeywell International, Inc.  Honeywell has filed a motion for summary judgment.  The

motion will be granted.

I.

St. Paul provided business and property insurance to Carrollton Bank ("Carrollton").

Carrollton contracted with Honeywell to provide service and maintenance of the HVAC system

at its downtown branch.  The contract was memorialized in the Service Agreement at issue in

this case.

On or about January 19, 2003, there was a water leak in a stairwell on the fifth floor of

Carrollton's downtown branch.  This was allegedly caused by "a coil in the HVAC unit . . .

[which] froze and cracked", as a result of inadequate maintenance or care by Honeywell.

Complaint ¶ 10.  The leak caused significant property damage, and interrupted Carrollton's

business operations.  *Id.*  As a result, Carrollton filed a claim with St. Paul, and St. Paul paid

Carrollton approximately $1,015,111.00 under its policy for consequential damages suffered by

Carrollton as a result of the flood.

St. Paul then filed this subrogation action against Honeywell,  asserting claims for

negligence, breach of contract, and breach of express and implied warranties.

## II.

### A.

Summary judgment is proper where there is no genuine issue of material fact and the moving party proves that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. Materiality is determined by the substantive law of the case; if a fact is in dispute that might affect the outcome of a case, it is considered to be material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When assessing a motion for summary judgment, the court must draw all justifiable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

### B.

Under Maryland law a subrogee can assert only the rights of the subrogor. *See Poe v. Philadelphia Cas. Co.*, 118 Md. 347, 353 (1912). In the context of insurance litigation, this means that an insurance company which has paid for a loss may only assert the claims and defenses the insured might have. *Potomac Elec. Power Co. v. Babcock & Wilcox Co.*, 54 F.R.D. 486, 489 (D. Md. 1972) ("An insurer which has paid for a loss in whole or in part becomes subrogated to the rights of the insured . . . and stands in the shoes of such subrogor"); *Gen'l Cigar Co., Inc. v. Lancaster Leaf Tobacco Co.*, 323 F. Supp. 931, 935 (D. Md. 1971) ("Suing here as subrogees, the insurance company plaintiffs possess only those rights against a third party which their insured might have, and any action taken by such insured which would bar its recovery against a third party would also be binding on the insurers"). Therefore, St. Paul can assert only the rights Carrollton could have asserted against Honeywell, and its claims are

subject to any defenses Honeywell could have raised in litigation with Carrollton. This includes any contractual disclaimer of liability Carrollton and Honeywell agreed to when entering into the Service Agreement.

III.

In Count One St. Paul asserts a tort claim for negligence. Specifically, St. Paul claims that Honeywell was negligent in

1.  Failing to exercise reasonable care in service, maintenance, repair, installation, and inspection of the HVAC system, its parts and accessories;

2.  Failing to warn Carrollton of defects in the HVAC system, its parts and accessories;

3.  Failing to properly inspect and maintain the HVAC system, its parts and accessories;

4.  Failing to detect and/or remedy potential hazards in the HVAC system, its parts and accessories;

5.  Improperly certifying that the HVAC system, its parts and accessories were in good operating condition and complied w/codes and standards;

6.  Failing to properly inspect the premises to ensure the HVAC system would not break, rupture, leak, freeze, or otherwise malfunction;

7.  Failing to warn Carrollton of the risk of freezing in HVAC units because of their of condition and location in the building; and

8.  Otherwise failing to exercise due care.

Complaint ¶ 14.

As a general matter, under Maryland law a plaintiff pursuing a claim for negligent performance of a duty created by the parties' agreement has only a contract, not a tort, remedy. *See, e.g.*, *Nixon Uniform Service, Inc. v. American Directory Service Agency, Inc.*, 693 F. Supp. 367, 369 (D. Md. 1988). As the court in *Nixon* explained, unless there are "special circumstances or special relationships surrounding or attending [the] transaction" giving rise to a tort duty, there is no recovery in tort for what is essentially a contract claim. *Id.* The existence of the contract itself will not suffice. *Rassa v. Rollins Protective Services Company*, 30 F. Supp. 2d 538 (D. Md. 1998) (explaining that a contractual relationship itself will not give rise, *ipso facto*, to a tort duty). Where, as here, the only injury claimed is economic, the special circumstances requirement has been explained as requiring an "intimate nexus" between the parties. *Jacques v. First Nat'l Bank of Maryland*, 515 A.2d 756, 759-60 (Md. 1986).

St. Paul contends that in this case Honeywell's status as a professional company employing workers with specialized skills creates such an "intimate nexus." The *Jacques* court did note that the requisite intimate nexus can exist where a tort duty "aris[es] from contractual dealings with professionals." *Id.* at 763. However, I have previously held that "[a]rms-length negotiations between representatives of commercial entities do not establish an intimate nexus unless 'they invoke considerations of personal trust and reliance'". *Sagent Technology, Inc. v. Micros Systems, Inc.*, 276 F. Supp. 2d 464, 471-72 (D. Md. 2003). The Fourth Circuit has stated similarly that the duty described in *Jacques* arises out of "contractual relationship[s] in circumstances involving a vulnerable party". *Lawyers Title Ins. Corp. v. Rex Title Corp.*, 282 F.3d 292, 294 (4th Cir. 2002).

In this case, the transaction between Carrollton and Honeywell was a routine service

agreement.  Neither party was vulnerable or inexperienced.  Rather, they are both established

businesses who were fully capable of entering into the contract.  As in *Sagent*, there were no

"considerations of personal trust and reliance".  Therefore, I find that the "intimate nexus"

contemplated by *Jacques* as a prerequisite for bringing a tort action arising from a contractual

relationship does not exist under the circumstances presented here.

IV.

Counts II and III, respectively, assert claims for breach of contract and breach of express

and implied warranties.  Honeywell seeks summary judgment as to these claims on the ground

that ¶ 5.6.1 of the Service Agreement clearly and expressly exculpated it from any consequential

damages.[1]

Paragraph 5.6.1 provides as follows:

5.6  <u>Indemnity and Limitation of Liability</u>
5.6.1 . . . HONEYWELL agrees to indemnify and hold CUSTOMER and its agents and
employees harmless from all claims for bodily injury and property damages to the extent such
claims result from or arise under HONEYWELL's negligent actions or willful misconduct in its
performance of the Services. . . . **IN NO EVENT SHALL HONEYWELL BE LIABLE FOR
ANY SPECIAL, INCIDENTAL, INDIRECT, SPECULATIVE, REMOTE, OR
CONSEQUENTIAL DAMAGES ARISING FROM, RELATING TO, OR CONNECTED
WITH THE SERVICES, EQUIPMENT, MATERIALS, OR ANY GOODS PROVIDED
HEREUNDER.**

---

[1]In its initial memorandum Honeywell also relied upon ¶ 5.5.2 of the Service Agreement
as support for its argument.  However, in its reply memorandum Honeywell commendably
concedes that Carrollton "has a point" that ¶ 5.5.2 might be ambiguous and disclaim liability for
consequential damages only in connection a breach of the limited repair and replacement
warranty contained in ¶ 5.5.1.  However, as Honeywell also notes, because the limited warranty
provided by ¶ 5.5.1 relates only to products, not services, and because ¶ 5.5.2 disclaims
consequential damages resulting from improper "services" as well as defective "equipment and
materials," ¶ 5.5.2 does confirm that when the Service Agreement is read as a whole, it is clear
that the parties intended to exclude liability for all consequential damages.

On considering a motion for summary judgment on a matter of contract interpretation, a court must first determine whether the contract is unambiguous on its face. *Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1126 (4th Cir. 1993).  If the contract is unambiguous, the court should interpret the contract as a matter of law and grant summary judgment on that issue. *Id.; see also Bullock Construction, Inc. v. Federal Express Corp.*, No. 87-1662, 1988 WL 45452 (4th Cir. May 4, 1988) (affirming the district court's grant of summary judgment for defendant where language on airbill stating "[w]e won't be liable in any case for incidental, consequential or special damages" unambiguously barred recovery of lost profits).  However, if the contract is ambiguous, the court may not grant summary judgment unless there is dispositive extrinsic evidence incorporated in the summary judgment materials. *Goodman*, 7 F.3d at 1126.  A contractual provision is ambiguous if it is "susceptible of two reasonable interpretations". *Id.* (quoting *American Fid. & Cas. Co. v. London & Edinburgh Ins. Co.*, 354 F.2d 214, 216 (1965)).  However, if a reasonably prudent person would have only one interpretation, the provision is unambiguous and should be given its plain meaning. *Auction & Estate Representatives, Inc. v. Ashton*, 731 A.2d 441, 444-45 (Md. Ct. App. 1999).

In this case, ¶5.6.1 in capitalized letters and bold font stated that "**IN NO EVENT SHALL HONEYWELL BE LIABLE FOR ANY SPECIAL, INCIDENTAL, INDIRECT, SPECULATIVE, REMOTE, OR CONSEQUENTIAL DAMAGES ARISING FROM, RELATING TO, OR CONNECTED WITH THE SERVICES, EQUIPMENT, MATERIALS, OR ANY GOODS PROVIDED HEREUNDER**."  This language could not be more clear and unequivocal.  St. Paul, however, seeks to find an ambiguity from the fact that the disclaimer was preceded by a provision relating to Honeywell's indemnification obligations

under the Service Agreement.  The obvious and fundamental fallacy in this contention is that

¶5.6 is captioned "Indemnity and Limitation of Liability."  This caption unequivocally reflects -

and no reasonably prudent person (particularly a sophisticated commercial entity like Carrollton)

- could otherwise believe that the paragraph refers to two different subjects:  indemnification *and*

limitation of liability.

      For these reasons, I find that Honeywell is entitled to summary judgment.  A separate

order effecting the rulings made in this memorandum is being entered herewith.


Date: August 22, 2006          /s/_____
                               J. Frederick Motz
                               United States District Judge


7